UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
www.flsb.uscourts.gov

In re:

TRADEWINDS AIRLINES, INC.,

    Debtor.
_____/

Chapter 11 Case

Case No. 08-20394-BKR-AJC

TRADEWINDS AIRLINES, INC.,

    Plaintiff,

v.

AAR AIRCRAFT SERVICES – MIAMI, INC. f/k/a
AVBORNE HEAVY MAINETANCE, INC.,

    Defendant.
_____/

Adv. Pro. 08-01546-AJC

### DEBTOR'S EMERGENCY MOTION FOR PRELIMINARY INJUNCTION

### (Emergency Hearing Requested)

Plaintiff, TradeWinds Airlines, Inc., ("TradeWinds" or "Debtor"), by and through undersigned counsel, files this Emergency Motion for Preliminary Injunction pursuant to 11 U.S.C. §§ 105(a) and 362, Fed. R. Bankr. P. 7065, and Local Rule 9075-1, seeking a preliminary injunction directing AAR Aircraft Services – Miami, Inc f/k/a Avborne Heavy Maintenance, Inc. ("Defendant"), to refrain from asserting, exercising or attempting to assert or exercise dominion, control, or authority over that certain Airbus model A-300 aircraft, tail number N504TA ("Aircraft 504") or the documentation and logbooks relating to Aircraft 504 (the "Logbooks"), and requiring Defendant to restore the Logbooks to Aircraft 504 and to allow Debtor and the Federal Aviation

Administration ("FAA") full access to Aircraft 504 and in support thereof states as follows:

## Jurisdiction and Venue

1. This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(a). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## Background

2. On July 25, 2008 (the "Petition Date"), Debtor filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"). Subsequent to the Petition Date, Debtor has continued to operate its business and manage its assets as a debtor in possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

3. Debtor is an air cargo carrier that provides airport-to-airport service to the air freight community.

4. Defendant is an FAA-approved repair station which maintains and operates facilities located at the Miami International Airport for the maintenance, modification, repair, overhaul, storage and functional testing of aircraft, aircraft parts, and aircraft components.

5. Pursuant to agreement, Defendant provides aircraft maintenance services to certain of Debtor's six Airbus model A-300 aircraft.[1]

---

[1] A more detailed recitation of the contractual relationship between the parties, in addition to the contracts themselves, is included in the Complaint for Turnover of Estate Property, to Determine Validity, Extent and Priority of Lien, for Determination of Violation of Automatic Stay and for Conversion filed in this adversary proceeding [D.E. 1]. Capitalized terms not otherwise defined in this Motion shall have the meaning provided therefor in the Complaint.

6. On or about April 25, 2008, Debtor prospectively entered into an Aircraft Maintenance Agreement with Defendant for an anticipated 96-month service maintenance check required for Aircraft 504 ("504 AMA").  As part of the 504 AMA, Defendant provided Debtor with a fixed price bid of $1,160,000 for the work described in Exhibit A to the 504 AMA.  The payment schedule under the 504 AMA provides for a $250,000 payment to be made by Debtor at aircraft induction.

7. On or about June 19, 2008, Debtor relocated Aircraft 504 to Defendant with the intention that a 96-month inspection check be performed.  However, the inspection could not be performed because Aircraft 504 was missing one engine and was unable to receive electrical power.  Without the missing engine and the inability to receive electrical power, the inspection process was unable to commence.

8. Since it was not feasible to perform any maintenance on Aircraft 504, Debtor requested that Defendant delay the 96-month inspection check.  Not surprisingly, Debtor received no objection from Defendant and Defendant affirmed it would not place Aircraft 504 in line for maintenance.

9. Most importantly, Defendant did not perform any maintenance on Aircraft 504 for which compensation is due and owing by TradeWinds.

10. The significance of Debtor's request that Aircraft 504 not be placed in line for maintenance and Defendant's agreement is two fold: (1) Debtor could not be charged the $250,000 amount due at induction of Aircraft 504 for maintenance pursuant to the AMA, and (2) no labor or services were authorized to be performed on Aircraft 504 that would give rise to a statutory mechanic's lien in Defendant's favor.

11. On the day immediately preceding the Petition Date, July 24, 2008, the Defendant filed a claim of lien with the Clerk of the Circuit Court in Miami-Dade County, Florida, as document no. CFN 2008R0607302, at O.R. Book 26493, Page 3683 (the "Claim of Lien") asserting a mechanic's lien solely against Aircraft 504 for labor, materials and services Defendant allegedly provided on Aircraft 504. Defendant further alleged these services were unpaid in the amount of $250,000, which is coincidentally the same amount to be charged Debtor had Aircraft 504 actually been placed in line for maintenance.

12. Post-petition, on July 29, 2008, Defendant recorded a certified copy of the Claim of Lien with the FAA (the "FAA Claim of Lien"), which asserts a lien in the amount of $250,000 against Aircraft 504, for labor, material or services allegedly performed on Aircraft 504.

13. On or about August 8, 2008, Debtor requested the return of Aircraft 504 from the Defendant. Defendant refused, claiming a purportedly valid mechanic's lien under state law.

14. In addition to its assertion of a mechanic's lien, Defendant also refused to return Aircraft 504 to the Debtor, asserting that Debtor had granted an allegedly valid possessor lien in accordance with certain provisions of the contractual agreements between the parties for amounts due and owing to Defendant for maintenance performed on other of Debtor's aircraft, as well as the purported "induction fee" of $250,000, in the aggregate amount of $1,976,999.09 (the "Monetary Claim").

15. The Claim of Lien filed against Aircraft 504 does not assert the Lien secures the Monetary Claim; instead, the Claim of Lien only references a claim in the amount of $250,000.

16. Prior to July 24, 2008, Defendant did not demand payment from TradeWinds for services allegedly rendered to Aircraft 504. Defendant did not attempt to assert a mechanic's lien on Aircraft 504.

17. Defendant, in blatant disregard of the automatic stay, has and continues to exercise dominion, control and authority over Aircraft 504 and the Logbooks. Defendant continues to deny Debtor any access to Aircraft 504 and has removed all of the Logbooks from the aircraft, allegedly placing them in the office of Defendant's counsel.

18. Most recently, and the impetus for filing this emergency request for injunctive relief, Defendant advised the FAA that Defendant is in control of Aircraft 504, and has refused to allow the FAA any access to Aircraft 504 or the Logbooks.

19. As a direct result of Defendant's continued violations of the automatic stay, the FAA directed Debtor to remove Aircraft 504 from its operating certificate, which will cause irreparable harm and injury to the Debtor.

20. As of the date of this filing, Defendant continues to assert its right to immediate possession of Aircraft 504 and the Logbooks.

21. Simultaneously herewith, the Debtor filed a Complaint (the "Complaint") against Defendant seeking, among other things: (i) turnover of estate property (Aircraft 504); (ii) a determination regarding the validity, extent and priority of Defendant's purported liens; and (iii) damages related to Defendant's violations of 11 U.S.C. § 362.

**Traditional Factors To Obtain Injunctive Relief**

22.     Traditionally, to obtain injunctive relief in a federal court, a movant must establish four factors: (1) a substantial likelihood of success on the merits; (2) a threat of irreparable injury, (3) a showing that its own injury would outweigh the injury to the nonmovant, and (4) the injunction will not disserve the public interest.  Tefel v. Reno, 180 F.3d 1286, 1295 (11th Cir. 1999); Haitian Refugee Ctr., Inc. v. Baker, 949 F.2d 1109, 1110 (11th Cir. 1991) (per curiam).

**Equitable Factors in Considering Injunctive Relief in Bankruptcy Context**

23.     The power of a bankruptcy court to issue an injunction is also provided for under Bankruptcy Code § 105.  Congress has granted U.S. bankruptcy courts the statutory power to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a); In re Hardy, 97 F.3d 1384, 1389 (11th Cir. 1996) ("The language of § 105 encompasses 'any type of order,' whether injunctive, compensative or punitive, as long as it is 'necessary or appropriate to carry out the provisions of' the Bankruptcy Code.'") (internal citations omitted); Jove Engineering, Inc. v. I.R.S., 92 F.3d 1539, 1553 (11th Cir. 1996) ("Under § 105, Congress expressly grants courts independent statutory powers in bankruptcy proceedings to 'carry out the provisions of the Bankruptcy Code through any order, process, or judgment that is necessary or appropriate.'").

24.     As the Seventh Circuit has recognized, established equitable factors guide rather than control a bankruptcy court's exercise of statutory power pursuant to § 105 of the Bankruptcy Code.  In re L & S Indus., Inc., 989 F.2d 929, 932 (7th Cir. 1993) (holding that because a bankruptcy court's broad equitable powers are granted by statute,

the court can issue preliminary injunctive relief without considering traditional equitable factors, and particularly without considering the adequacy of legal remedies, so long as the requested relief is necessary or appropriate to further the provisions of Title 11). See also In re Eagle-Picher Indus., Inc., 963 F.2d 855, 859 (6th Cir. 1992) (concluding that bankruptcy court did not err in discounting the likelihood that a movant would succeed on the merits in awarding relief pursuant to section 105 "considering that the source of [the court's] authority to grant such an injunction emanates from section 105(a) whose purpose is to assist the court in carrying out the provisions of the Bankruptcy Code…").

25. In determining whether to grant the requested preliminary injunction pursuant to 11 U.S.C. § 105, this Court should therefore focus on "whether the requested relief is necessary or appropriate to carry out the provisions of the [Bankruptcy Code]." 11 U.S.C. § 105(a); In re L & S Indus., Inc., 989 F.2d at 932. But in making that determination, the Court may be guided by the application of those factors that are traditionally relevant to the award of preliminary equitable relief. Id.

## Application of Factors

26. An analysis of the four traditional factors indicate preliminary injunctive relief is warranted.

## Substantial Likelihood of Success on the Merits

27. First, the Debtor submits that the Defendant's complete failure to actually provide maintenance (labor or services) for Aircraft 504 is fatal to the Defendant's claim of possession under a statutory mechanic's lien theory. Further, Defendant's failure to properly comply with Federal and State recording statutes invalidates any purported contractual possessory lien asserted by the Defendant which could encumber Aircraft

7

504. Moreover, the Defendant's current possession of Aircraft 504 violates the automatic stay provisions of 11 U.S.C. § 362.

## Validity and Priority of Aircraft Liens

28. Fla. Stat. § 713.58 provides a lien for labor or services on personal property "in favor of persons performing labor or services for any other person, upon the personal property of the latter **upon which the labor or services is performed** . . . ." [Emphasis added].

29. Fla. Stat. § 329.51 provides:

> Any lien claimed on an aircraft under s. 329.41 or s. 713.58 is enforceable when the lienor records a verified lien notice with the clerk of the circuit court in the county where the aircraft was located at the time the labor, services, fuel, or material was last furnished. The lienor must record such lien notice within 90 days after the time the labor, services, fuel, or material was last furnished. The notice must state the name of the lienor; the name of the owner**; a description of the aircraft upon which the lienor has expended labor, services, fuel, or material**; the amount for which the lien is claimed; and the date the expenditure was completed. **This section does not affect the priority of competing interests in any aircraft or the lienor's obligation to record the lien under s. 329.01.**

[Emphasis added].

30. Fla. Stat. § 329.01 provides:

8

> **No instrument which affects the title to or interest in any civil aircraft of the United States, or any portion thereof, is valid in respect to such aircraft,** or portion thereof, against any person, other than the person by whom the instrument is made or given, the person's heirs or devisee, and any person having actual notice thereof, **until such instrument is recorded in the office of the Federal Aviation Administrator of the United States**, or such other office as is designated by the laws of the United States as the one in which such instruments should be filed. Every such instrument so recorded in such office is valid as to all persons without further recordation in any office of this state. Any instrument required to be recorded by the provisions of this section takes effect from the date of its recordation and not from the date of its execution
>
> [Emphasis added].

31. Pursuant to 49 U.S.C. § 44108, until an instrument executed for security purposes is filed for recording with the FAA, the instrument is valid only against the person making the instrument, and not against any other person or entity.

32. Defendant did not perform any labor or services for Plaintiff upon Aircraft 504 and therefore cannot by law assert a valid mechanic's lien against the aircraft pursuant to Fla. Stat. §§ 713.58, 329.51, and 329.01.

33. Pursuant to Fla. Stat. §§ 329.01, 329.51, and 713.58 and 49 U.S.C. § 44108, a lien in an aircraft arising under Florida law that is created by contract or by statute is unenforceable unless an instrument asserting such lien is properly recorded with

9

the Clerk of the Circuit Court in the county in which the aircraft had work performed by the party asserting the lien, and is invalid against third parties unless an instrument asserting such lien is properly recorded with the FAA.

34. Further, the Claim of Lien filed by the Defendant with the Clerk of the Circuit Court in and for Miami-Dade County, Florida is silent regarding the Monetary Claim asserted by the Defendant pursuant to the parties' contractual agreements. The Claim of Lien only refers to a claim in the amount of $250,000, which is far less than the amount of the Monetary Claim. Therefore, Defendant cannot have a valid lien against Aircraft 504 for amounts due and owing by Debtor for maintenance performed on aircraft other than Aircraft 504 under Fla. Stat. § 329.01.

### Defendant's Actions Violate The Automatic Stay

35. Debtor respectfully submits that Defendant's refusal to allow Debtor access to Aircraft 504 and the Logbooks constitutes a violation of the automatic stay. Pursuant to 11 U.S.C. § 362(a)(3), the filing of the bankruptcy petition automatically stays "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." Accordingly, Defendant's wholesale ban of Debtor from Aircraft 504 and the Logbooks amounts to a willful attempt to violate the automatic stay. See In re Del Mission Ltd., 98 F.3d 1147, 1151 (9th Cir. 1996) (finding that a creditor's knowing retention of property of the estate violates the automatic stay as an act to "exercise control over the property of the estate"). Further, "to effectuate the purpose of the automatic stay, the onus to return estate property is placed upon the possessor; it does not fall on the debtor to pursue the possessor." Id. (citations omitted).

36.     Aircraft 504 is clearly property of the estate as defined by 11 U.S.C. § 541(a)(1)[2]. Defendant was advised by undersigned counsel that it had no interest in Aircraft 504 superior to the interest of Debtor as a debtor in possession, and that Defendant was required to turnover Aircraft 504 pursuant to 11 U.S.C. § 542[3]. Accordingly, Defendant's refusal to relinquish possession of Aircraft 504 and its continued assertion of custody, control and authority over Aircraft 504 is a knowing act in contravention of 11 U.S.C. § 362.

37.     Thus, it is substantially likely that the Debtor will succeed on the merits on all claims asserted in the Adversary.

### The Threat of Irreparable Injury

38.     The second factor for the Court to consider is the threat of irreparable injury to Debtor.  If Defendant continues to retain possession of Aircraft 504 and represent to the FAA that it is in operational control of Aircraft 504, Debtor will be irreparably harmed by being forced to remove Aircraft 504 from its operating certificate, thereby eliminating Debtor's ability to use Aircraft 504, its parts and components.

39.     Defendant's actions are hindering Debtor's ability to keep its remaining A-300 aircraft compliant with FAA air regulations, without going to the added expense of leasing or purchasing additional aircraft parts and components that are readily found on Aircraft 504.  It is standard practice within the air cargo industry to swap out parts and

---

[2] 11 U.S.C. § 541(a)(1) defines property of the estate to include "all legal or equitable interests of the debtor in property as of the commencement of the case."

[3] Pursuant to § 542 of the Bankruptcy Code, an entity in possession, custody or control of property of a debtor's estate that a debtor in possession, standing in the shoes of a trustee, may use, sell, or lease under § 363 of the Bankruptcy Code, shall deliver to the debtor in possession and account for such property.  TradeWinds, as a debtor in possession standing in the shoes of a chapter 11 trustee, may use, sell, or lease Aircraft 504 and the Logbooks under § 363 of the Bankruptcy Code, subject to Bankruptcy Court approval.

components between operational aircraft meeting FAA standards.  However, FAA regulations require that any parts or components of an operational aircraft come from another operationally compliant aircraft.  If the FAA requires Debtor to remove the Aircraft 504 from its operating certificate, the use of any parts or components from Aircraft 504 in other aircraft owned by Debtor will have the trickle-down effect of making such other aircraft non-operational by FAA standards.[4]

40.     Debtor must regain control over Aircraft 504 to stave off the inevitable and irreparable harm to be inflicted by the obstinate and flagrant automatic stay violations of Defendant, especially in light of the FAA's recent request that Aircraft 504 be removed from Debtor's operating certificate.

**The Risk and Cost To Debtor Substantially Outweighs Defendant's Risk and Costs**

41.     The third factor for the Court to consider is whether the injury to Debtor outweighs the injury to Defendant.  In contrast to the great risk and substantial cost to the Debtor's estate, the requested relief poses only a minor burden on Defendant, if any at all.  Since Defendant's actions were undertaken in violation of the automatic stay provision of the Bankruptcy Code, Defendant will suffer no prejudice if it is preliminarily restrained from engaging in those acts.  Defendant is also not prejudiced since it may assert claims in Debtors' bankruptcy for any prepetition claims.

**A Preliminary Injunction Would Serve
the Public Interest and Protects the Intent of the Bankruptcy Code**

42.     The fourth factor considers whether the entry of a preliminary injunction would disserve the public interest.  In this instance, the public interest favors entry of the

---

[4] Debtor filed for bankruptcy relief, in part, due to a lack of capital funding for replacement engines for its fleet of aircraft.  Aircraft 504 currently has one engine that is operable and that Debtor can use on a "power by the hour basis" if granted access to it.  However, Defendant's actions are further exacerbating Debtor's need for engines by denying Debtor access to Aircraft 504.

preliminary injunction proposed by Debtor, which is directed at protecting the integrity of the bankruptcy system generally, and the property of the Debtor's estate in particular. Balancing the severe threat to the bankruptcy estate that Defendant's acts of control and authority over Aircraft 504 pose, against the minor inconvenience that may be caused to Defendant by the grant of the requested relief, indicates that the requested relief is necessary and appropriate to ensure that the provisions of the Bankruptcy Code are enforced. A preliminary injunction restraining Defendant from asserting dominion, control and authority over Aircraft 504 and making representations of control or authority over Aircraft 504 to the FAA is both necessary and appropriate to carry out the provisions of Title 11.

## No Security Required

43. Pursuant to Rule 7065, Fed. R. Bankr. Proc, no security is required in connection with the issuance of a preliminary injunction requested by a debtor or debtor in possession. Accordingly, Debtor submits that no security is required in connection with the preliminary injunction sought by this Motion.

## Local Rule 9075-1 Certification

44. For the reasons set forth above, the Debtor requires an immediate hearing to consider the Motion, as it will suffer direct, immediate, and substantial harm if Aircraft 504 is removed from its operating certificate. Undersigned counsel certifies that a bona fide effort was made to resolve the matter without hearing, but was unsuccessful.

## Conclusion

45. Defendant has engaged in acts in contravention of the Bankruptcy Code's automatic stay provision resulting in harm to Debtor and it bankruptcy estate. The

preliminary injunction proposed by Debtor is intended to ensure that Defendant does not exert functional control over Aircraft 504 that has a direct adverse effect on Debtor's airline cargo business.

46. In light of (i) the Debtor's substantial likelihood of success on the merits of the Complaint, (ii) the substantial threat of irreparable injury to the Debtor's ability to successfully reorganize if Defendant is permitted to assert dominion, control or authority over Aircraft 504, including the likely removal of Aircraft 504 from Debtor's operating certificate, (iii) the lack of any prejudice to Defendant, and (iv) the public interest that is served by the issuance of a preliminary injunction which protects the integrity of the bankruptcy system, Debtor submits that a preliminary injunction is necessary and appropriate.

WHEREFORE, Debtor respectfully request that this Court enter a preliminary injunction (i) prohibiting Defendant from asserting dominion, control or authority over Aircraft 504; (ii) prohibiting Defendant from refusing access to Aircraft 504 or the Logbooks by any agent or inspector of the FAA or Debtor, (iii) directing Defendant to restore the Logbooks to Debtor on onto Aircraft 504; and (iv) granting such other and further relief that the Court may deem just and proper.

Dated:  August 23, 2008

15

I HEREBY CERTIFY that I am admitted to the Bar of the United States District Court for the Southern District of Florida and that I am in compliance with the additional qualifications to practice in this court set forth in Local Rule 2090-1(A).

**BILZIN SUMBERG BAENA PRICE & AXELROD LLP**
*Counsel for the Debtor*
*TradeWinds Airlines, Inc.*
200 South Biscayne Boulevard
Suite 2500
Miami, Florida  33131
Telephone:  (305) 374-7580
Facsimile:  (305) 374-7593

By:      /s/ Mindy A. Mora
Scott L. Baena
Florida Bar No. 186445
Mindy A. Mora
Florida Bar No. 678910
Jason Z. Jones
Florida Bar No 186554